■ NORMAN E. SINGER et al., Appellants, v BELA FRIEDMAN et al., Respondents. (And a Third-Party Action.) [632 NYS2d 802] —In an action, *inter alia*, to recover damages for personal injuries and wrongful death, the plaintiffs appeal from (1) an order of the Supreme Court, Kings County (Vaccaro, J.), dated November 9, 1993, which granted the defendants' motion for summary judgment dismissing the complaint, and (2) an order of the same court, dated October 28, 1994, which denied the plaintiffs' motion which was denominated as one for renewal but, in fact, was one for reargument.

Ordered that the appeal from the order dated October 28, 1994, is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order dated November 9, 1993, is reversed,

on the law, the defendants' motion is denied, and the complaint is reinstated; and it is further,

Ordered that the plaintiffs are awarded one bill of costs.

On Wednesday, September 20, 1989, the plaintiffs' decedent, a 75-year-old resident of the Leben Home for Adults, was found dead at the bottom of a closet in her room. The closet had been padlocked from the outside. She was only found after a chambermaid noticed a foul odor in her room and an Assistant Administrator of the home noticed blood at the threshold of the closet. A medical investigator who examined the body at the scene shortly after it was found estimated that the body had been dead since Monday evening and noted that there was "no obvious cause of death". However, Dr. Nadia Savitsky, a medical examiner who performed the autopsy, was unable to ascertain the time of death. She determined that the decedent was the victim of a homicide, and that her death resulted from fractured ribs, a contusion of the scalp, and heart disease.

The plaintiffs commenced an action, *inter alia*, to recover damages for the decedent's pain and suffering, and "her funeral bill and other expenses" incurred "[b]y reason of her wrongful death". Thereafter, at an examination before trial, Israel Gombo, Administrator of Leben Home for Adults, acknowledged that it was difficult to say when the plaintiffs' decedent was last seen alive, but that he recalled seeing her on "*a* Monday evening at dinner time in the main dining room".

The defendants moved for summary judgment asserting that Leben Home for Adults is a "Level II Congregate Care Facility", from which each resident may leave without notice. The defendants asserted that there was no evidence of a negligent failure to monitor the decedent's whereabouts, no evidence that the decedent suffered conscious pain and suffering, and no evidence that the decedent's son suffered a loss of care, love and guidance, or pecuniary loss from the decedent's death. With respect to the wrongful death cause of action, the defendants contended that the decedent's funeral could have been conducted by the Hebrew Free Burial Society, and therefore the funeral and burial "orchestrated" by the decedent's son was gratuitous and voluntary.

The plaintiffs, in opposition, submitted the affidavits of two expert witnesses. Lola Woodson, a registered nurse, stated that the defendants were negligent in failing to conduct nightly bed-checks to ensure that the decedent was on the premises and in failing to attempt to ascertain her whereabouts when she failed to appear at meals in violation of 18 NYCRR 490.7 (d). Paragraph (2) of subdivision (d) of that rule, which is applicable to residences for adults (*see*, 18 NYCRR 490.0), states:

"(2) In the event that a resident is absent from the facility and the resident's whereabouts are unknown, the operator must initiate efforts to find the resident and, if the absence exceeds 24 hours:

"(i) immediately notify the resident's next of kin or representative;

"(ii) immediately notify the appropriate law enforcement agency".

Ms. Woodson stated that the defendants should have been concerned for missing residents because prior violent incidents occurred at the home. It is undisputed that, about two months prior to the decedent's death, another resident was found beaten in an elevator on the premises and died from her injuries. Ms. Woodson stated that there should have been special concern for the decedent because she was severely depressed, had a history of mental illness, and had refused to take her medicine for about two weeks.

Dr. Leslie Lukash, a forensic pathologist and Chief Medical Examiner of Nassau County, stated in his affidavit that it was his opinion, to a reasonable degree of medical certainty, that the decedent's injuries were not consistent with immediate death and her death was a slow, painful process. Dr. Lukash further stated, with a reasonable degree of medical certainty, that the decedent was alive after her assault, and remained alive for a considerable length of time following it, and if she had been discovered while still alive, her life could have been saved.

The court granted the defendants' motion, concluding that "[t]he fact that employees of the home did not find [the decedent] for nearly two days after her death merely implies some negligence may have occurred *after* her death" (emphasis supplied). That conclusion was based upon findings that the decedent was last seen alive on the evening of Monday, September 18, 1989, and that the parties did not dispute that the decedent died that Monday evening.

There are difficulties with each of these findings. Israel Gombo testified at his examination before trial that it was difficult to recall when he last saw the decedent, but it was "*a* Monday evening at dinner time" (emphasis supplied). Dr. Savitsky was unable to ascertain the time of death. The court's finding that the decedent died on Monday, September 18, 1989, is apparently based upon an estimate made at the scene shortly after the body was found by a medical investigator who noted that there was no obvious cause of death.

In any event, "it is axiomatic that issue finding, rather than

issue determination, is the standard for reviewing a motion for summary judgment" (*Daniels v Judelson*, 215 AD2d 623, 624). The moving party has the initial burden of demonstrating the absence of any material issue of fact (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320), by tendering evidentiary proof in admissible form (*see, Zuckerman v City of New York*, 49 NY2d 557). The defendants failed to meet that burden. Further, the expert affidavits submitted by the plaintiffs established prima facie that the defendants were negligent in failing to monitor the decedent's whereabouts, in violation of State regulations, by allowing the decedent's dying and then decomposing body to remain in a locked closet in her own bedroom. Dr. Lukash's sworn statements that it was his opinion, with a reasonable degree of medical certainty, that the decedent suffered a slow and painful death, based upon her injuries as described in the autopsy report, was sufficient to raise an issue of fact as to whether the decedent suffered conscious pain and suffering (*see, Star v Berridge*, 77 NY2d 899). Further, funeral expenses paid by a distributee constitute damages recoverable in a wrongful death action (*see*, EPTL 5-4.3 [a]). The question of whether funeral expenses are reasonable is an issue of fact (*see, Matter of Matyasz*, 151 Misc 370, 377).

Accordingly, the defendants are not entitled to summary judgment. Thompson, J. P., Altman, Goldstein and Florio, JJ., concur.